FILED

06/08/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 14, 2017 Session Heard at Belmont University College of Law[1]

**STATE OF TENNESSEE v. ERROL SHIELDS**

**Appeal from the Circuit Court for Williamson County**
**No. I-CR076581      Michael Binkley, Judge**

_____

**No. M2016-01342-CCA-R3-CD**

_____

A Williamson County jury convicted the Defendant, Errol Shields, of theft of property valued at more than $500 but less than $1,000, and the trial court sentenced him to two years, suspended to probation.  The Defendant filed a motion for judgment of acquittal and/or a new trial and then filed a supplement to that motion.  The trial court denied the motion, and the Defendant appeals.  On appeal, the Defendant contends that the trial court erred when it denied his motion because the evidence is insufficient to sustain his conviction and that the trial court improperly allowed the State to introduce evidence that the Defendant returned an item to the store that he had legally purchased.  After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Dana C. McClendon, III (at trial), Franklin, Tennessee, and Patrick Timothy McNally (on appeal), Nashville, Tennessee, for the appellant, Errol Lester Shields.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Kim R. Helper, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

---

[1] The court heard oral argument in this case on March 14, 2017, at Belmont University College of Law in Nashville, Tennessee.

This case arises from an incident that occurred at a Sam's Club store on December 22, 2011, resulting in a Williamson County grand jury indicting the Defendant for theft of property valued between $500 and $1,000. At the Defendant's trial on this charge, the parties presented the following evidence: Andy Lee testified that, at the time of this event, he was the asset protection manager for Sam's Club in Franklin, Tennessee. His position included loss prevention, both internal and external. Mr. Lee testified that the Defendant had a membership with Sam's Club on December 22, 2011, which he used to enter the store. Mr. Lee said that this membership card, which each customer must swipe before making a purchase, gave Sam's Club the ability to track the purchases made by a customer.

Mr. Lee identified the receipt of the purchase made by the Defendant on December 22, 2011, at 5:26 p.m. The Defendant purchased a queen-sized comforter set for $54.98 and a queen-sized memory foam mattress topper for $99.96, along with a few other items. Mr. Lee opined that these two items were used to conceal other merchandise that the Defendant removed from the store on that date.

Mr. Lee said that, on December 23, 2011, a member of his daily audit team informed him that a 24-inch television, valued at $279, was missing. Mr. Lee said that he reviewed the security camera recordings from several of the over 400 cameras located in the store. He began watching the video from the camera section of the store, starting at the time of the last audit. He noted that, in the twenty-four hour period between the two audits, the particular television that was stolen was only picked up one time and that was by the Defendant. Mr. Lee said that, after he saw the Defendant pick up the television on the video, he used video from other cameras in the store to track the Defendant's movements through the store on the day before.

Mr. Lee said that the Defendant traveled through the store with the television. He went to the domestic aisles, through the grocery section, and then back and forth between the sections. Mr. Lee noted that the Defendant then circled around the whole store and that he eventually went to the mattress and bedding aisle. Mr. Lee watched a video of the Defendant picking up a comforter set and a large mattress, placing those items in his cart and then walk around the store once. Mr. Lee said that he saw the Defendant lean down and appear to tamper with the merchandise and then go to the tobacco register to check out. On the video, it appears that items are located in the buggy in a manner so that the cashier cannot reach the bar code of the items to scan them. The tapes from the stores showed the Defendant taking the television box from his cart, lifting it with only one hand, and placing it among the large mattress boxes. He then picked up a comforter set, using two hands, and arranged the comforter in his cart. The tapes showed the Defendant stopping again at the mattresses and comforters. The tapes showed him bend down, appearing to manipulate one of the boxes. The Defendant then placed an item in his cart.

2

Mr. Lee said he then investigated and discovered that a $99 mattress topper at the store had the price code or "UPC" cut off. The box was located behind the $499 foam mattress box where the Defendant had been seen on the video. He noted that the Defendant's receipt indicated that he purchased that $99 mattress topper. He also found an empty 24-inch JVC television box in the area of the domestic aisle where the Defendant was located on the video.

Mr. Lee said that he began investigating this case on a Friday and then did not work again until Monday. He continued investigating the case on Monday and did not contact the police until the following Friday. He provided the police with the pictures and the videos of the events surrounding the Defendant's shopping trip. Some of those pictures were shown to the jury. Mr. Lee identified the portion of the video showing the Defendant pick up the 24-inch television, valued at $279, and place it into his shopping cart. He also showed the jury video confirming the Defendant looking at the $499 foam mattress, placing the queen comforter in his shopping cart, placing food items in his shopping cart, and then kneeling down by the mattress toppers and placing the $499 foam mattress in his cart. Mr. Lee reiterated that the Defendant's receipt reflected that he purchased a $99 mattress topper.

Mr. Lee then identified footage of the Defendant going to check out at the tobacco counter, which was mainly used for checking out tobacco purchases. He said that this area had no belts and no way to remove purchases from the shopping cart. Mr. Lee said that the video showed cashier Kristy Lewandowski checking out the Defendant. She was unable to reach the UPC code of some of the items in the shopping cart. The Defendant indicated to Ms. Lewandowski where she should scan the mattress, which Mr. Lee found suspicious.

Mr. Lee testified that, after this incident, he learned that the Defendant used his Sam's Club membership card at a store in Alabama to return the comforter that he had purchased in Franklin on the date of this incident. The date of the return was December 30, 2011. He contacted the manager at the store in Alabama, who identified the Defendant by Mr. Lee's description of him, and the manager retrieved the Defendant's membership card.

During cross-examination, Mr. Lee testified that the Defendant's membership began in June 1996, so by the time of the incident the Defendant was likely familiar with Sam's Club procedures. These procedures included presenting his membership card when entering the store, presenting it when checking out, and having his receipt verified by an exit greeter as he left the store. Mr. Lee said that, in the week of this alleged theft, he handled three or four shoplifting incidents. Other managers, who were also trained in

loss prevention, may have dealt with other incidents. He agreed that there were sometimes errors in inventory, which accounted for part of the $85,000 that Sam's Club lost from "shoplifting" and "shrinkage" in 2011. Another portion of the loss was attributed to scanners that did not work properly, which necessitated daily testing of the scanners to ensure they were working properly. Mr. Lee said that he did not independently verify that the UPC codes on the items in question were scanning properly.

Mr. Lee testified that merchandise was often located in the wrong place in the store, usually because a customer moved it to a different location. The store employed "[g]o-backs" to find items misplaced in the store and place them in the correct area of the store.

Mr. Lee agreed that the Defendant's pointing out of the UPC code to the cashier could have been completely innocent. He also agreed that the boxes from the television and from the mattress were both thrown away. He agreed that they could have contained relevant evidence. Mr. Lee agreed that there was no eye witness or camera video showing the Defendant moving the UPC code from one item to the next. Similarly, there was no eye witness or video of him removing the television from the box or attempting to conceal a television. Mr. Lee agreed that it was possible that the inventory count improperly reflected how many televisions were in the store.

During redirect examination, Mr. Lee testified that when he began investigating this case, he found an empty television box, matching the missing television, on the same aisle as the mattress topper that had the missing UPC code. He said that he retained that box for two years until he transferred employment from Sam's Club to Walmart in December 2013. He said that the box was at the Sam's Club when he left, but, when he was subpoenaed to court for this case, he contacted Sam's Club employees, who informed him that the box was no longer there.

Mr. Lee noted that the comforter purchased by the Defendant that day was in a plastic zipper bag. He stated that the $499 foam mattress and the $99 mattress topper were both the same brand.

Kristy Lewandowski testified that at the time of these events, December 2011, she worked at Sam's Club as a cashier in the tobacco department. She recalled checking out the Defendant on December 22, 2011. She said that, usually, her customers were decisive when purchasing cigarettes, choosing immediately what they wanted to purchase. She said that the Defendant, however, did not appear to know what "he was doing" and did not know what quantity or brand of cigarettes he wanted to purchase.

4

Ms. Lewandowski recalled that the Defendant had a heavy, large item in his cart. He pointed out to her where the UPC code for the item was located, and she reached her scanner up to scan the item. Ms. Lewandowski testified that she could not see the UPC code at the time that she scanned it. Ms. Lewandowski said that, after this incident, a police officer showed her a photographic lineup, from which she identified the Defendant's photograph as being of the man who had purchased those items on December 22, 2011.

During cross-examination, Ms. Lewandowski testified that she had been a cashier at Sam's Club for a total of three years. She said that this was not the first time that a customer helped her locate the UPC code on an item when she was checking them out. She agreed that she made almost a full circle around the cart scanning items in his cart, including items in the bottom of the cart. Ms. Lewandowski said that her interaction with the Defendant did not "feel right" but she could not pinpoint the issue.

Andrew Green, a detective with the Franklin City Police Department, testified that he investigated this case. He recalled that Mr. Lee turned over to him the results of Mr. Lee's investigation. He used the Defendant's name to create a photographic lineup that he showed Ms. Lewandowski. She identified the Defendant's picture. Detective Green testified that the Defendant and the Defendant's brother were on the same Sam's Club account, so he needed to ensure that Ms. Lewandowski identified who she checked out on the day in question.

During cross-examination, Detective Green conceded that it may have helped him to have the box to compare any fingerprints on it with the Defendant's fingerprints. The detective said, however, in his three years in general investigations, fingerprint evidence had only been helpful in one case. The detective said that he never recovered any stolen property, and he also did not make any effort to do so.

During redirect examination, Detective Green testified that, in his experience, stolen merchandise was sold shortly after being stolen. He knew that the Defendant returned items he purchased at the Franklin, Tennessee, store to a store in Alabama. He did not have the Alabama store address, and he felt there was little chance of recovering the stolen items from the Defendant.

Based upon this evidence, the jury convicted the Defendant on July 30, 2014, of theft of property valued at more than $500 but less than $1,000. On December 2, 2004, the trial court sentenced him to two years, suspended to probation. On December 31, 2014, the Defendant filed a motion for judgment of acquittal and/or for a new trial alleging that the State had not proven his guilt beyond a reasonable doubt. He supplemented that motion on June 1, 2015. In the supplemental motion, the Defendant

5

contended that the trial court erred when it admitted certain pieces of evidence, namely his return of a legally purchased comforter to a store in Alabama and that the evidence was insufficient to sustain his conviction.

On May 27, 2016, the trial court issued an order denying the Defendant's motion for judgment of acquittal. In it, the trial court noted that the parties had failed to schedule a hearing on the motion and that, when the court assistant called the defense counsel, defense counsel asserted that the matter should be considered upon the record. The trial court then, based upon its review of the record as a whole, determined that the Defendant's motions were not well taken and denied relief.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his motion because the evidence is insufficient to sustain his conviction and that the trial court improperly allowed the State to introduce evidence that the Defendant had returned an item to a Sam's Club store in Alabama that he had legally purchased at a Sam's Club store in Franklin, Tennessee.

### A. Sufficiency of Evidence

The Defendant contends that the evidence is insufficient to sustain his conviction for theft by shoplifting because there was "absolutely no direct evidence [the Defendant] concealed the television and substituted a UPC code to steal a mattress," as the State alleged. The State counters that sufficient evidence was presented to sustain the Defendant's conviction. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be

drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

A person commits theft of properly pursuant to the "shoplifting" statute if the person, with the intent to deprive a merchant of the stated price of merchandise, knowingly commits any of the following acts:

7

(1) Conceals the merchandise;

(2) Removes, takes possession of, or causes the removal of merchandise;

(3) Alters, transfers or removes any price marking, or any other marking which aids in determining value affixed to the merchandise.

(4) Transfers the merchandise from one container to another; or

(5) Causes the cash register or other sales recording device to reflect less than the merchant's stated price for the merchandise.

T.C.A. § 39-14-146 (2014). Theft of property valued at more than $500 but less than $1,000 is a Class E felony. T.C.A. § 39-14-105(2) (2014).

In this case, the evidence, viewed in the light most favorable to the State, proved that the Defendant entered the Sam's Club store in Franklin, Tennessee, on December 22, 2011. The next day, loss prevention personnel determined that a television was missing from the store. Mr. Lee, the head of loss prevention, reviewed the security camera tapes from the 24 hours during which he knew that the television had been taken, beginning from the last accurate accounting of the televisions in inventory. The only person who picked up a television during that 24-hour period was the Defendant. The security footage showed the Defendant placing the television in his cart. He was then seen going around the store, stopping in the mattress aisle. The Defendant took out the television box from his cart, lifting it with only one hand, and placed it among the large mattress boxes. He then picked up a comforter set, using two hands, and arranged the comforter in his cart. The tapes showed the Defendant stopping again at the mattresses and comforters. The tapes showed him bend down, appearing to manipulate one of the boxes. The Defendant then placed an item in his cart. The Defendant checked out at the cigarette counter, and the cashier found something to be "off" but she continued to check out the Defendant. The Defendant's receipt showed that he purchased a $99 mattress topper and not the $499 mattress in his cart. The Defendant also purchased a comforter that was in a zipper bag large enough in which the 24-inch television could fit. The Defendant did not purchase a television set.

When Mr. Lee investigated the mattress aisle where the Defendant was seen on his knees appearing to manipulate a box, he found a $99 mattress missing its UPC tag. He also found a box matching the missing television. On December 30, 2011, the Defendant returned the comforter to an Alabama Sam's Club.

The Defendant was not on video the entire time he was in the store. The State showed the clips that it deemed relevant, but Sam's Club did not capture the Defendant's every movement. We conclude that a reasonable jury could find beyond a reasonable doubt that the Defendant concealed and removed the JVC television set and then changed

the UPC price and removed the mattress topper at Sam's Club with the intent to deprive Sam's Club of the stated price of the merchandise. The Defendant is not entitled to relief on this issue.

### B. Evidence Regarding Comforter Return

The Defendant next contends that the trial court erred when it allowed the State to introduce evidence that he returned the comforter that he lawfully purchased to the Alabama Sam's Club. He asserts that this evidence was not relevant. The State counters that the evidence that he purchased and then returned the comforter was relevant to the State's theory that he used the comforter to conceal the television set.

Generally questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this Court will not interfere with the exercise of that discretion in the absence of a clear showing of abuse appearing on the face of the record. *State v. McCoy*, 459 S.W.3d 1, 8 (Tenn. 2014) (citations omitted). "A trial court abuses its discretion only when it applies an incorrect legal standard or makes a ruling that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *Id.*

Under Rule 401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 402 states, "All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible." Tenn. R. Evid. 402. Finally, Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

After review, we conclude that the trial court did not apply an incorrect legal standard or make an illogical or unreasonable ruling, causing injustice to the Defendant, when it allowed the State to offer evidence that the Defendant returned the comforter days after the theft. The State's theory included that the Defendant placed the television and comforter in his shopping cart. Then, at some point, he removed the television from the box and placed it inside the zipped, queen-sized comforter bag with the comforter. The Defendant then discarded the television box in the mattress aisle. The empty box was light and, therefore, he could lift it with one hand. The State's theory was that the Defendant did not purchase the comforter because he wanted it but in order to conceal the television. Supporting this theory, the trial court allowed the State to show that the

Defendant returned the comforter to another store shortly after the theft.  The trial court did not abuse its discretion in this regard.

Nor did the trial court abuse its discretion when it determined that the probative value of this evidence was not outweighed by its prejudicial effect.  The Defendant argues that this evidence would mislead the jury and was unnecessary.  We disagree.  In our view, the evidence supported the State's theory of the case and was not misleading. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE